=IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL LOBATO,

       Plaintiff,

vs.                                                 Civ. No. 05-00561 JCH/LCS

STATE OF NEW MEXICO,
NEW MEXICO PUBLIC DEFENDER
DEPARTMENT, JOHN BIGELOW, Chief State
Public Defender, individually, DAVID EISENBERG,
Deputy State Public Defender, individually, JOHN
STAPLETON, Director of Human Resources, New
Mexico Public Defender Department, individually,
CHRISTINA HATFIELD, District Defender,
Eleventh Judicial District, individually, RAY
ARCHAMBEAU, Managing Attorney, Eleventh
Judicial District Public Defender's Office,
individually, BRETT SNYDER, Public Defender,
Eleventh Judicial District, individually, and
WILLIAM WORKMAN, Paralegal, Eleventh Judicial
District Public Defender's Office, individually,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants State of New Mexico, New Mexico Public Defender Department (collectively "State of New Mexico"), John Bigelow, David Eisenberg, John Stapleton, Christian Hatfield, Ray Archambeau, and William Workman's (collectively, "Individual Defendants") Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim upon which Relief may be Granted, filed July 22, 2005 [Doc. No. 11] ("Motion to Dismiss").  The Court having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the motion is well taken in part and will be granted in part.

**STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading. Fed. R. Civ. P. 12(b)(6). A court may dismiss a cause of action under Rule 12(b)(6) for failure to state a claim only if it appears beyond a doubt that a plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (citation omitted). In considering a Rule 12(b)(6) motion, a court must assume all well-pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991), *cert. denied*, 504 U.S. 912 (1992); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998). The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will prevail ultimately, but whether a plaintiff is entitled to offer evidence to support his or her claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

These deferential rules, however, do not allow a court to assume that a plaintiff "can prove facts that [the plaintiff] has not alleged or that the defendants have violated the . . . laws in ways that [the plaintiff has not] alleged." *See Associated Gen. Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The rules also do not require a court to accept legal conclusions or unwarranted inferences. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citation omitted).

**DISCUSSION**

In their Motion to Dismiss, Defendants argue that the Court should dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim. First, the Individual Defendants argue that the Court should dismiss Plaintiff's Equal Protection claim based upon a hostile work environment for failure to allege facts demonstrating harassment pervasive or severe enough to alter the terms, conditions, or privileges of employment or harassment that was racial or stemmed from racial animus. Second, the Individual Defendants claim that the Court should dismiss Plaintiff's Section 1983 Equal Protection and First Amendment claims because the complaint does not contain allegations sufficient to indicate that Plaintiff has standing to maintain the suit. Third, Defendant State of New Mexico argues that the Court should dismiss Plaintiff's Title VII retaliation and discrimination claims because the complaint does not contain allegations that demonstrate an adverse employment action and subsequent harm to the employee and because the complaint does not contain allegations demonstrating pervasive or severe harassment. Fourth, the Individual Defendants argue that the Court should dismiss Plaintiff's Section 1981 and 1983 claims because the Individual Defendants are entitled to qualified immunity from suit. The Court will address each of these arguments in turn.

I.      Equal Protection Claim

The Individual Defendants first claim that the Court should dismiss Plaintiff's Equal Protection claim based upon a hostile work environment because Plaintiff cannot establish that the alleged harassment was pervasive or severe enough to alter the terms, conditions, or privileges of

employment or that the harassment was racial or stemmed from racial animus.[1]

Under Section 1981, to establish a prima facie case of harassment/hostile work environment in violation of the Equal Protection Clause, Plaintiff must show that "under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 67 (1986), and (2) the harassment was racial or stemmed from racial animus." *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). A plaintiff must show "'more than a few isolated incidents of racial enmity.'" *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987) (quoting *Snell v. Suffolk Co.*, 782 F.2d 1094, 1103 (2d Cir. 1986)). "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Bolden*, 43 F.3d at 551 (citing *Hicks*, 833

---

[1] Although Plaintiff does not specify, it appears that he brings his hostile work environment Equal Protection claim pursuant to both 42 U.S.C. Section 1983 and 42 U.S.C. Section 1981. Section 1983 provides in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. Section 1981 provides, in relevant part:

> (a) All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .
> (b) For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a) and (b).

F.2d at 1412-13).[2]

In support of his Equal Protection claim, Plaintiff alleges that he was subject to a hostile working environment "includi[ng], but not limited to" being called "F[******[3]] Mexican" by Defendant Snyder, "Greaser" or similar epithets by Defendant Workman, and being told to "shut up," "leave my office," and "[not] to tell me [about discriminatory treatment], because then I have to do something about [it]" by Defendant Hatfield. Plaintiff also alleges that in retaliation for filing complaints with the U.S. Equal Employment Opportunity Commission (EEOC), Defendants Bigelow, Eisenberg, Stapleton, Archambeau, and Hatfield took disciplinary action against him. Specifically, Defendant Eisenberg served Plaintiff with a Notice of Contemplated Action that recommended a suspension without pay for three (3) days based upon Plaintiff allegedly "making false statements to a public agency [the EEOC]." Thereafter, Plaintiff alleges that he received a written reprimand and threats of further disciplinary action for making false statements to a public agency.

These allegations do not rise to the level of harassment pervasive or severe enough to alter

---

[2] Plaintiff presumably brings his Equal Protection claim under Section 1983 as well as Section 1981. Although it is well-established that racial harassment can be actionable under Section 1983, it is not clear what constitutes a Section 1983 hostile work environment claim. *See Mitchell v. City & County of Denver*, No. 02-1263, 2004 U.S. App. LEXIS 21188 (10th Cir. Oct. 12, 2004) (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1397 (10th Cir. 1992); *Ryan v. City of Shawnee*, 13 F.3d 345, 349-50 (10th Cir. 1993)). Presumably, under Section 1983, Plaintiff would have to establish the elements of a hostile work environment claim, including severe and pervasive harassment sufficient to alter the terms, conditions, or privileges of employment.

[3] The word used is "fuckin'." The Court, however, finds it unnecessary to use the word throughout its opinion.

5

the terms, conditions, or privileges of Plaintiff's employment.  Plaintiff's sole allegation with respect to Defendant Snyder is that he called Plaintiff a "F[******] Mexican."  Plaintiff's allegations with respect to Defendant Workman indicate that he called Plaintiff a "Greaser" or similar epithets.  Plaintiff's allegations with respect to Defendant Hatfield indicate that he told Plaintiff to "shut up," "leave my office," and "[not] to tell me [about discriminatory treatment], because then I have to do something about [it]."  Plaintiff also alleges generally that Defendant Hatfield proceeded to take disciplinary action against him, but does not provide any specific factual allegations demonstrating the Defendant Hatfield was involved in the disciplinary process.  These comments analyzed separately for each defendant show at most no more than a "'few isolated incidents of racial enmity.'" *Hicks*, 833 F.2d at 1412 (quotation omitted).  They do not constitute a "steady barrage of opprobrious racial comments" by any one Defendant.  *Bolden*, 43 F.3d at 551 (citing *Hicks*, 833 F.2d at 1412-13).

With respect to Defendants Bigelow, Stapleton, and Archambeau, Plaintiff alleges only that they took disciplinary action against Plaintiff.  Plaintiff does not provide any specific factual allegations demonstrating these Defendants were involved in the disciplinary process.  With respect to Defendant Eisenberg, Plaintiff alleges only that he issued a Notice of Contemplated Action to Plaintiff that recommended a suspension without pay for three days for allegedly making false statements to the EEOC.  These actions likewise are insufficient to constitute harassment pervasive or severe enough to alter the terms, conditions, or privileges of Plaintiff's employment.

On the facts alleged, it does not appear that Plaintiff can prove any set of facts in support

of his hostile work environment Equal Protection claim that would entitle him relief.[4] Accordingly, the Court grants the Individual Defendants' Motion to Dismiss the Equal Protection claim for failure to state a claim for relief.

II.     Section 1983

The Individual Defendants claim that the Court should dismiss Plaintiff's Section 1983 claims because the complaint does not contain allegations sufficient to indicate that Plaintiff has standing to maintain the suit.[5]  Because the Court already has granted the Motion to Dismiss with respect to Plaintiff's Equal Protection claim, the Court need only consider the Individual Defendants' Section 1983 claim as it applies to Plaintiff's First Amendment retaliation claim.

There are three requirements of Article III standing.  "First, the plaintiff must suffer an injury in fact.  An injury in fact is an 'invasion of a legally protected interest' that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical."  *Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1280 (10th Cir. 2002) (internal citations omitted).  "Second, the injury must be 'fairly traceable to the challenged action of the defendant,' rather than some third party not before the court."  *Id.* (citation omitted).  "Third, it must be likely that a favorable court decision will redress the injury of the plaintiff."  *Id.* (citation omitted).  The burden to establish standing rests on the party invoking federal jurisdiction.  *Loving v. Boren*, 133

---

[4] Because the Court grants the Motion to Dismiss on the ground that the allegations do not rise to the level of severe and pervasive harassment, the Court need not address the Individual Defendants' second argument that the complaint fails to allege facts sufficient to demonstrate that the harassment was racial or stemmed from racial animus.

[5] The Individual Defendants do not move for dismissal on the ground that Plaintiff has failed to state a claim by alleging all of the elements of a prima facie retaliation case.

7

F.3d 771, 772 (10th Cir. 1998). At the motion to dismiss stage, a court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. Applying this to the standing inquiry, a court must "'presume that general allegations [of standing] embrace those specific facts that are necessary to support the claim.' Therefore, at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'" *Utah v. Babbitt*, 137 F.3d 1193, 1204 (10th Cir. 1998) (internal citations omitted).

The Individual Defendants argue that the complaint fails to allege any concrete injury, and therefore that Plaintiff's Section 1983 claims must be dismissed for lack of standing. At the pleading stage, however, general factual allegations of injury resulting from the Individual Defendants' conduct suffice for purposes of establishing standing. *Cf. id.* Plaintiff alleged that he was "harmed and damaged" by the alleged retaliation, which is sufficient to establish standing at this stage of the litigation. Accordingly, the Individual Defendants' Motion to Dismiss because Plaintiff does not have standing to assert his Section 1983 claims is denied.

Moreover, in addition to the foregoing general allegations that Plaintiff was "harmed and damaged," Plaintiff also has alleged that he "received a written reprimand and threats of further disciplinary action for 'making false statements to a public agency.'" A written reprimand may constitute injury in fact that is not *de minimis*. *Compare Baca v. Sklar*, 398 F.3d 1210, 1220 (10th Cir. 2005) (holding that the reprimand of plaintiff, the removal of supervisory responsibilities, and the filing charge against plaintiff in an effort to demand resignation could constitute adverse employment actions in the First Amendment context); *Schuler v. City of Boulder*, 189 F.3d 1304, 1309-10 (10th Cir. 1999) (stating, where defendants, among other

8

things, gave plaintiff a written reprimand, that the reprimand could constitute an adverse employment action); *see also Goffer v. Marbury*, 956 F.2d 1045, 1049 n.1 (11th Cir. 1992) (acts as discharges, demotions, refusals to hire or promote, and *reprimands*" can be considered "adverse employment action[s] in a First Amendment retaliation case") (emphasis added); *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994) ("'Adverse employment action' is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and *reprimands*") (emphasis added); *Yoggerst v. Stewart*, 623 F.2d 35 (7th Cir. 1980) (noting that "if a transfer can have a chilling effect on speech, the effect of a[n oral] reprimand is even clearer"; "[t]ransfer does not necessarily threaten discharge; reprimand presumably does"). Accordingly, the Court denies the Individual Defendants' Motion to Dismiss the First Amendment claim for this reason as well.

III.  Title VII

    A.  Retaliation

Title VII of the Civil Rights Act of 1964 provides in relevant part, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiff alleges that the State of New Mexico is liable for the acts and omissions of Defendants Hatfield, Snyder, and Workman, including their retaliation for Plaintiff's "having protested prohibited discrimination in his place of employment."

9

To properly allege a Title VII retaliation claim, Plaintiff must, among other things, allege facts that if true, establish that he has suffered an adverse employment action.[6] The Tenth Circuit has noted that the standard of what constitutes an adverse employment action under Title VII may be more stringent than what constitutes adverse action under the First Amendment. *See, e.g.*, *Maestas v. Segura*, 416 F.3d 1182, 1188 n.6 (10th Cir. 2005) ("We have repeatedly stated that some forms of retaliation may be actionable under the First Amendment while insufficient to support a discrimination claim under Title VII") (citing cases); *Baca*, 398 F.3d at 1220 ("We have repeatedly concluded that a public employer can violate an employee's First Amendment rights by subjecting an employee to repercussions that would not be actionable under Title VII"). Although in the context of Title VII, "the Tenth Circuit liberally defines an 'adverse employment action,' its existence is determined on a case by case basis and does not extend to a mere inconvenience or an alteration of job responsibilities." *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000) (internal quotation marks omitted); *see also Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212-13 (10th Cir. 2003). "To be an adverse action, the employer's conduct must be 'materially adverse' to the employee's job status." *Id.* (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998) *and* citing *Aquilino v. Univ. of Kansas*,

---

[6] Under the McDonnell Douglas burden-shifting framework, Plaintiff must establish a prima facie case by showing "that: (1) [he] engaged in protected opposition to discrimination; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *O'Neal v. Ferguson Contr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001). "Once [Plaintiff] makes a prima facie showing, [the Individual Defendants] must articulate a legitimate, nondiscriminatory reason for the adverse employment action. [Plaintiff] must [then] respond by demonstrating [that the Individual Defendants'] asserted reasons for the adverse action are pretextual." *Id.* (internal citation omitted).

268 F.3d 930, 934 (10th Cir. 2001)).  An adverse action must be "a significant change in employment status, such as . . . firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Aquilino*, 268 F.3d at 934 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

      Courts, including the Tenth Circuit, have held that "'unsubstantiated oral reprimands' and 'unnecessary derogatory comments' such as those alleged here are not included within the definition of adverse action absent evidence that they had some impact on the employee's employment status."  *Sanchez*, 164 F.3d at 533; *see also, e.g.*, *Wells*, 325 F.3d at 1214.  "Retaliatory conduct other than discharge or refusal to rehire is thus proscribed by Title VII only if it alters the employee's 'compensation, terms, conditions, or privileges of employment,' or adversely affects his [or her] status as an employee.'  It follows that 'not everything that makes an employee unhappy' qualifies as retaliation, for 'otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'"  *Sanchez*, 164 F.3d at 533 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).

      For example, the Tenth Circuit has held that a supervisor's oral reprimand of a plaintiff in the presence of persons who needed to respect the plaintiff's instructions, although inappropriate, did not constitute an adverse employment action because the alleged disrespect shown to plaintiff by a contractor a few days after the incident did not establish a loss of authority that was severe or prolonged enough to constitute a "materially adverse" reduction in job responsibilities.  *Wells*, 325 F.3d at 1214.  The Tenth Circuit explained that it has followed other courts in holding that

11

"unnecessary derogatory comments" are not in themselves "materially adverse employment actions." *Id.* The Tenth Circuit also has held that threats to "write up" a plaintiff for insubordination and threats to place a plaintiff on a program for improvement do not constitute adverse employment actions. *Sanchez*, 164 F.3d at 533; *see also Robinson*, 120 F.3d at 1300-01 (holding that the issuance of several unsubstantiated oral reprimands and the giving of unnecessary derogatory comments do not constitute adverse employment actions).

Plaintiff alleges not that he was given an unsubstantiated oral reprimand, but rather, among other things, that he actually was given a written reprimand for allegedly making false statements to the EEOC. The Tenth Circuit has held, in the context of First Amendment retaliation, that written reprimands can constitute adverse employment actions. *Baca*, 398 F.3d at 1220; *Schuler*, 189 F.3d at 1309-10; *see also Yoggerst v. Stewart*, 623 F.2d 35 (7th Cir. 1980) (noting that "if a transfer can have a chilling effect on speech, the effect of a[n oral] reprimand is even clearer"; "[t]ransfer does not necessarily threaten discharge; reprimand presumably does"). Although the Tenth Circuit also has implied that a stricter standard might apply in the Title VII context, at this stage of the litigation, the Court cannot say that the written reprimand at issue did not alter Plaintiff's "'compensation, terms, conditions, or privileges of employment,' or adversely affect[ Plaintiff's] status as an employee." *Sanchez*, 164 F.3d at 533. Because this Court cannot say beyond a doubt that Plaintiff can prove no set of facts in support of his Title VII retaliation claim that would entitle him to relief, the Court denies Defendant State of New Mexico's Motion

to Dismiss the claim.[7]

      B.      <u>Hostile Work Environment</u>

"In racial discrimination suits, the elements of a plaintiff's case are the same . . . whether that case is brought under §§ 1981 or 1983 or Title VII." *Drake v. Ft. Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991). Accordingly, to establish a Title VII discrimination case based upon a hostile work environment, Plaintiff must allege, as he was required to do in support of his hostile work environment Equal Protection claims, facts indicating harassment pervasive or severe enough to alter the terms, conditions, or privileges of employment.[8] *See supra* § I.

Plaintiff brings his Title VII claim against Defendant State of New Mexico based upon the acts and omissions of Defendants Hatfield, Snyder, and Workman. Even if the allegations regarding statements made by these defendants are taken collectively, instead of individually, Plaintiff has only alleged that he was subjected to a work environment in which he was called a "F[******] Mexican" and a "Greaser," and in which he was told to "shut up," "leave my office," and "[not] to tell me [about discriminatory treatment], because then I have to do something about [it]." These allegations together, even combined with Plaintiff's allegation that certain Defendants

---

[7] The Court notes that the McDonnell Douglas framework, which requires a showing by Plaintiff of an adverse employment action, is an evidentiary, and not a pleading, standard. The Supreme Court has held that the requirements for establishing a prima facie case under this evidentiary standard do not apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-13 (2002). The Court need not decide whether adverse employment action is a pleading or evidentiary requirement, because the Court already has held that Plaintiff has alleged facts sufficient to meet the standard..

[8] Establishing harassment pervasive or severe enough to alter the terms, conditions, or privileges of employment is a pleading, and not an evidentiary, requirement. *See supra* note 7.

13

took disciplinary action against him, show at most no more than a "'few isolated incidents of racial enmity.'" *Hicks*, 833 F.2d at 1412 (quotation omitted).  They do not constitute a "steady barrage of opprobrious racial comments." *Bolden*, 43 F.3d at 551 (citing *Hicks*, 833 F.2d at 1412-13).  Accordingly, Plaintiff's Title VII hostile work environment claim is subject to dismissal for the same reason the Court dismissed Plaintiff's Equal Protection claims based upon a hostile work environment theory, *i.e.*, the failure to alleged facts indicating harassment pervasive or severe enough to alter the terms, conditions, or privileges of employment.

IV.     Qualified Immunity

The Individual Defendants argue that the Court should dismiss Plaintiff's Equal Protection and First Amendment claims against them in their individual capacities because they are protected by qualified immunity.  The Court need not decide whether qualified immunity protects the Individual Defendants from Plaintiff's Equal Protection claims because the Court already has dismissed those claims.  *See supra* § I.  The Court therefore need only consider whether the Individual Defendants are immune from Plaintiff's First Amendment retaliation claims.

The standard for analyzing a motion to dismiss shifts slightly if, as here, a defendant raises qualified immunity as a defense to a suit under 42 U.S.C. Section 1983.  Qualified immunity bars Section 1983 suits against defendants in their individual--but not official--capacities.  *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (citations omitted).  The qualified immunity defense was created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).  It provides defendants not only with immunity from liability but also with immunity from suit.  *See*

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It grants defendants the "right . . . . to avoid standing trial . . . [and] to avoid the burdens of such pretrial matters as discovery." *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (citation and internal quotations omitted), *cert. denied*, 535 U.S. 1056 (2002). As a result, the Tenth Circuit "'repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Id.* at 1185 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Although "summary judgment provides the typical vehicle for asserting a qualified immunity defense," the defense can be raised on a motion to dismiss. The Tenth Circuit has held, however, that "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment," because a "'motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted.'" *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (citation omitted) (quoting *Lone Star Indus. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992)).

Once a defendant raises the defense of qualified immunity on a motion to dismiss, a plaintiff must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established so that [a] reasonable official[] in [the] defendant[']s situation would have understood [his or her] conduct violated that right." *Leibson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996); *see also, e.g.*, *Saucier*, 533 U.S. at 201-02. If a plaintiff fails to satisfy this two-part burden, a court must grant the defendant qualified immunity. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). A court's

15

review of a qualified immunity defense raised in a motion to dismiss is limited to the pleadings. *See Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994) (citation omitted), *cert. denied*, 513 U.S. 1183 (1995).

The sole argument of the Individual Defendants in support of their motion to dismiss the First Amendment claim on qualified immunity grounds is that Plaintiff cannot state a constitutional violation because he has not alleged an adverse employment action. The Individual Defendants claim that "no disciplinary action was taken," and that "[t]here is no constitutionally protected right to be free from planned, but unexecuted, employment action." As described herein, Plaintiff has alleged that he was given a written reprimand. The Court already has explained that a written reprimand constitutes an adverse employment action.[9] *See supra* § III.A. The Court further concludes that based upon the case law cited herein, it was clearly established at the time of the conduct in question that a written reprimand could constitute an adverse employment action. Accordingly, the Court denies the Defendants Bigelow, Eisenberg, Stapleton, Hatfield, and Archambeau's Motion to Dismiss the First Amendment claim.

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that Defendants State of New Mexico, New Mexico Public Defender Department, John Bigelow, David Eisenberg, John

---

[9] Because Plaintiff has not alleged that Defendant Workman was his employer or supervisor or that Defendant Workman took disciplinary action against him as his employer or supervisor, the Court finds that Plaintiff has not alleged sufficient facts to state a First Amendment violation by Defendant Workman. Defendant Workman, therefore, unlike the remaining individual Defendants, is entitled to qualified immunity from Plaintiff's First Amendment retaliation claim, and the Court grants Defendant Workman's Motion to Dismiss the First Amendment claim on the ground that Defendant Workman is protected by qualified immunity.

Stapleton, Christian Hatfield, Ray Archambeau, and William Workman's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim upon which Relief may be Granted, filed July 22, 2005 [Doc. No. 11] is hereby **GRANTED IN PART** as follows:

(1)    The Individual Defendants' Motion to Dismiss Plaintiff's Sections 1981 and 1983 Equal Protection claims is GRANTED; Plaintiff shall have ten (10) days from the date of this order to file an amended complaint if he can allege, consistent with this Memorandum Opinion and Order, harassment pervasive or severe enough to alter the terms, conditions, or privileges of Plaintiff's employment;

(2)    The Individual Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. Section 1983 First Amendment claim for lack of standing is DENIED;

(3)    Defendant State of New Mexico's Motion to Dismiss Plaintiff's Title VII retaliation claim is DENIED;

(4)    The State of New Mexico's Motion to Dismiss Plaintiff's Title VII hostile work environment discrimination claim is GRANTED; Plaintiff shall have ten (10) days from the date of this order to file an amended complaint if he can allege, consistent with this Memorandum Opinion and Order, harassment pervasive or severe enough to alter the terms, conditions, or privileges of Plaintiff's employment;

(5)    Defendant Workman's Motion to Dismiss Plaintiff's 42 U.S.C. Section 1983 First Amendment claim on qualified immunity grounds is GRANTED; and

(6)    Defendants Bigelow, Eisenberg, Stapleton, Archambeau, and Hatfield's Motion to Dismiss Plaintiff's 42 U.S.C. Section 1983 First Amendment claim on qualified immunity grounds

is DENIED.

Dated this 30th day of March 2006.

                                                                                                                                  */s/ Judith C. Herrera*
                                                                                                                                  JUDITH C. HERRERA
                                                                                                                                  UNITED STATES DISTRICT JUDGE